IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

THOMAS B. FARLEY, JR, and
T & R TRUCKING CO., INC.,
a West Virginia Corporation

     Plaintiffs,

v.                                       Civil Action No: 2:05-0917

ORIX FINANCIAL SERVICES, INC.,
Formerly known as ORIX CREDIT
ALLIANCE, INC.

     Defendant.

## MEMORANDUM OPINION AND ORDER

Pending before the court is plaintiffs' motion for summary judgment as to defendant's counter-claim (Doc. No. 29).  Having reviewed the record and applicable law, and for the reasons outlined below, the court DENIES plaintiffs' motion for summary judgment (Doc. No. 29).

### I.  Factual and Procedural Background

Plaintiffs filed a complaint against defendant in this court on November 17, 2005 (Doc. No. 1), and later filed an amended complaint on August 1, 2006 (Doc. No. 24).  Plaintiffs state that they purchased ten coal trucks from Stephens Truck & Trailer Sales, Inc., ("Stephens Truck") in 1998, financing the trucks with three conditional sale contract notes ("notes") payable to Stephens Truck.  (Doc. No. 27 Ex. A.)  Stephens Truck assigned the notes to defendant, Orix Financial Services, Inc. ("Orix"). (Doc. No. 27 Ex. B.)  Plaintiff Thomas Farley, president of T&R

Trucking Co., Inc., ("T&R Trucking"), also signed a Guaranty
Agreement agreeing to be held personally liable for any
obligations T&R Trucking owed or would owe to defendant.  (Doc.
No. 27 Ex. D.)

In August 2000, plaintiffs notified defendant that they were
revoking their acceptance of the coal trucks pursuant to section
46 of the West Virginia Code.  (Doc. No. 27 Ex. 1 at 6.)
Plaintiffs claimed that Stephens Trucking misrepresented certain
express warranties regarding the tonnage of coal each truck was
capable of hauling.  (Id.)  After plaintiffs returned the trucks
to Stephens Trucking, defendant took possession of the trucks and
sold them in February 2001.  (Doc. No. 27.)  Defendant claims it
incurred a loss of over $290,000 when it sold the reclaimed coal
trucks, and it brought a counterclaim against plaintiff Farley
seeking to enforce their written guaranty agreement.  (Id.)[1]

On October 27, 2006, plaintiffs motioned for summary
judgment regarding defendant's counterclaim.  (Doc. No. 37.)
Plaintiffs allege that (1) defendant's claim is barred by the
applicable statute of limitations, (2) defendant is not a holder
in due course, and (3) the contracts between plaintiffs and

_____

[1]  On November 15, 2005, defendant brought suit against plaintiff
Farley based upon his written guaranty in the United States
District Court for the Southern District of New York.  On April
28, 2006, defendant was awarded default judgment against Farley.
Defendant later withdrew its New York cause of action and
asserted its claim against Farley as a counterclaim in this case.
(Doc. No. 38 at 3.)

defendant are unconscionable.  (Id.)  Defendant responded on November 9, 2006 (Doc. NO. 38), and plaintiffs filed their reply on December 5, 2006.

Because of a possible choice of law issue, this court ordered both parties to brief the issue of which state's law it should apply to defendant's counterclaim.  (Doc. No. 42.) Plaintiffs submitted their initial brief on the choice of law issue on December 18, 2006.  (Doc. No. 43.)  Defendant responded to the court's order on December 27, 2006 (Doc. No. 46), and plaintiffs filed their reply on January 16, 2006 (Doc. No. 48). As such, this motion is ripe for adjudication.

## II.  Standard of Review

A motion for summary judgment may be granted when there are no genuine issues of material fact and the movant is entitled to a judgment as a matter of law.  Fed. R. Civ. P. 56(c); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986).  Summary judgment is appropriate when the nonmoving party has the burden of proof on an essential element of his case and does not make, after adequate time for discovery, a showing sufficient to establish that element.  Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

The nonmoving party must satisfy this burden of proof by offering more than a mere "scintilla of evidence" in support of its position.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242,

252 (1986).  "If the evidence is merely colorable, or is not
significantly probative, summary judgment may be granted."  Id.
at 250-51.  Finally, "[o]n summary judgment the inferences to be
drawn from the underlying facts . . . must be viewed in the light
most favorable to the party opposing the motion."  United States
v. Diebold, Inc., 369 U.S. 654, 655 (1962).

### III.  Analysis

### A.  Choice of Law

Plaintiff Farley executed a written guaranty agreement on
October 30, 1998, in Salyersville Kentucky.  (Doc. No. 27 Ex. D.)
Farley guaranteed the performance of all debts and liabilities
T&R Trucking then owed or would owe to Orix.  (Id.)  The guaranty
agreement contained a choice of law provision stating that "this
instrument . . . shall be interpreted according to the laws of
the state of New York (excluding its choice of law rules) . . .
."  (Id.)  Because choice of law provisions are presumptively
valid in West Virginia, and the parties have a substantial
relationship to the state of New York, this court will apply New
York law to defendant's counterclaim.

West Virginia recognizes the presumptive validity of a
choice of laws provision.  See General Elec. Co. v. Keyser, 275
S.E.2d 289, 293 (W. Va. 1981); see also Nickey v. Grittner, 297
S.E.2d 441 (W. Va. 1982).  Choice of law provisions are not
without scrutiny, however.  Generally, West Virginia will

4

recognize the parties' choice of law provision "unless the chosen state has no substantial relationship to the parties to the transaction or unless the application of the law would be contrary to the fundamental public policy of the state whose law would apply in the absence of a choice of law provision."  Bryan v. Massachusetts Mut. Life Ins. Co., 364 S.E.2d 786, 790 (W. Va. 1987).

In General Electric, the Supreme Court of Appeals of West Virginia declined to enforce a New York choice of laws provision in a guaranty agreement because the only relationship the parties had with New York was the fact that General Electric, the guarantee, was incorporated there.  275 S.E.2d at 296.  That alone, the court held, was insufficient to support the choice of laws provision.

That is not the case here.  Farley and Orix executed a guaranty agreement in Kentucky, whereby Farley guaranteed the performance of his company, T&R Trucking, on all of its obligations to Orix, a New York Corporation.  The notes secured by the guaranty agreement indicated that T&R Trucking would make all payments to Orix at 100 Dutch Hill Road, Orangeburg, New York.  (Doc. No. 27 Exs. A, C, H.)

Unlike in General Electric, the parties in this case intended that performance on the underlying obligations would be

in New York.[2]  See 275 S.E.2d at 296.  The fact that the parties intended performance to be in New York coupled with the fact that defendant is a New York corporation creates a substantial relationship between the parties and New York, and supports the parties' choice of law provision.  See id.

Applying New York law does not contravene West Virginia public policy either.  See Bryan, 364 S.E.2d at 790.  Many of plaintiffs' arguments are based upon provisions of the Uniform Commercial Code (UCC).  (Doc. No. 37.)  New York, as well as West Virginia, has adopted the UCC.  See Cont'l Info. Sys. Corp. v. Mut. Life Ins. Co. of N.Y., 432 N.Y.S.2d 952, 954 (N.Y. App. Div. 1980)("In 1962 New York adopted the Uniform Commercial Code . . . .").  Moreover, plaintiffs argue that defendant's counterclaim is barred by the applicable statute of limitations for a breach of a contract of sale.  (Doc. No. 37 at 2.)  The West Virginia statute of limitations for a breach of a contract of sale is based on the UCC, see W. Va. Code § 46-2-725, and it is the same as that in New York.  See N.Y. UCC Law § 2-725.  Therefore, applying New York law does not undermine West Virginia public policy.

---

[2]  In General Electric, the guarantor was a New York corporation, and the guarantee was a West Virginia resident.  275 S.E.2d at 296.  However, the court applied California law to a dispute over the guaranty agreement in part because "[p]ayment of the underlying obligation was to be made to the California bank and thus, it may be said that the guaranty agreement contemplated performance at the California bank."  Id.

6

Thus, because the parties have a substantial relationship to New York, and applying New York law does not contravene West Virginia public policy, this court will apply the parties' choice of law provision and adjudicate defendant's counterclaim pursuant to New York law.

### B. State of Limitations Argument

Plaintiffs argue that defendant's counterclaim is barred by the four-year statute of limitations for breach of a contract of sale under the UCC.  See N.Y. UCC Law § 2-725 ("An action for breach of any contract for sale must be commenced within four years after the cause of action has accrued.").  Defendant argues that its counterclaim is based only on the guaranty agreement between plaintiff Farley and defendant, which is an independent contract, and thus not subject to the UCC's four-year statute of limitations.  (Doc. No. 38 at 5.)  This court agrees with defendant.

Under New York law, a guaranty agreement is an independent contract separate from the underlying obligation.  See Am. Trading Co. v. Fish, 364 N.E.2d 1309, 1312-13 (N.Y. 1977); Wetzler v. Roosevelt Raceway, Inc., 622 N.Y.S.2d 232, 235 (N.Y. App. Div. 1995).  Therefore, "the guarantee is subject to the six-year period of limitations applicable to contracts generally . . . ."  Am. Trading Co., 364 N.E.2d at 1313; see also N.Y. C.P.L.R. 213 (subd. 2).

The six year statute of limitations in this case began to
run in July 2000, when T&R Trucking ceased making payments to
defendant on the underlying debt, and defendant accelerated the
balance due.  (Doc. No. 38 at 2); See Haber v. Nasser, 733
N.Y.S.2d 720, 721 (N.Y. App. Div. 2001) ("The six year Statute of
Limitations applicable to a guaranty begins to run when the
debtor defaults on the underlying debt.").

Defendant filed its counterclaim on August 21, 2006, more
than six years after the statute of limitations commenced.  (Doc.
No. 27.)  However, under New York law, a counterclaim is "not
barred if it was not barred at the time the claims asserted in
the complaint were interposed."  N.Y. C.P.L.R. 203(d).  Here,
plaintiffs commenced this action on November 17, 2005, which was
within six years of when the statute of limitations on
defendant's cause of action began to run.  Therefore, because
defendant's counterclaim was timely when plaintiffs commenced
their cause of action, it is not time barred now.  See Sea Trade
Co. Ltd. v. FleetBoston Financial Corp., No. 03 Civ. 10254(JFK),
2006 WL 2786081, at *2 (S.D.N.Y. Sept. 21, 2006).

### C. Holder in Due Course Argument

Plaintiffs argue that defendant may not rely on holder in
due course status.  (Doc. No. 37 at 6.)  Plaintiffs contend that
because defendant is not a holder in due course, it is subject to

all personal defenses that plaintiffs may have against Stephens

Trucking on the underlying debt.  (Id. at 6-8.)

Plaintiffs' argument is misplaced, however.  A guaranty

agreement is not a negotiable instrument, but rather a separate,

non-negotiable contract.  Mfr. & Traders Trust Co. v. Int'l

Packaging, Inc., 617 N.Y.S.2d 91, 92 (N.Y. App. Div. 1994).  The

doctrine of holder in due course only applies to the "holder of a

negotiable instrument."  N.Y. U.C.C. Law § 3-302.  Therefore,

plaintiffs' argument is inapposite.

### D.  Unconscionability Argument

Plaintiffs last argument is that both the guaranty agreement

and the underlying obligations secured by the guaranty agreement

are unconscionable.  (Doc. No. 37 at 11.)

"[A] contract is unconscionable where there is an absence of

meaningful choice on the part of one of the parties together with

contract terms which are unreasonably favorable to the other

party."  Brennan v. Bally Total Fitness, 198 F. Supp. 2d 377, 382

(S.D.N.Y. 2002) (internal quotation marks omitted).

Unconscionability in New York "requires both procedural and

substantive elements."  Id.  Procedural unconscionability exists

when a "party lacked a meaningful choice in deciding whether to

sign the contract."  Id. "A contract is substantively

unconscionable where its terms are unreasonably favorable to the

party against whom unconscionability is claimed."  Id.  Finally,

a court "should take a "flexible approach" when determining whether a contract is unconscionable, "examining all the facts and circumstances of a particular case." Id. (internal quotation marks omitted).

Because plaintiffs' claim of unconscionability requires the court to examine evidence of the circumstances surrounding the formation of the guaranty agreement, it is not suitable for resolution on a motion for summary judgment. See Carlson v. General Motors Corp., 883 F.2d 287, 292 (4th Cir. 1989). Therefore, the court must deny plaintiffs' motion.

### IV. Conclusion

For reasons outlined above, this court **DENIES** plaintiffs' motion for summary judgment (Doc. No. 37). The Clerk is directed to send a copy of this Memorandum Opinion and Order to all counsel of record.

It is SO ORDERED this 9th day of March, 2007.

ENTER:

David A. Faber
Chief Judge